1  Terrence M. Jones (SBN 256603)
   jonestm@ballardspahr.com
2  Richard W. Miller (PHV Application Pending)
   millerrw@ballardspahr.com
3  BALLARD SPAHR LLP
   2029 Century Park East, Suite 800
4  Los Angeles, CA  90067-2909
   Telephone: 424.204.4400
5  Facsimile: 424.204.4350

6  Attorneys for Plaintiffs LARADA
   SCIENCES, INC. and UNIVERSITY OF
7  UTAH RESEARCH FOUNDATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARADA SCIENCES, INC., a Delaware corporation; and UNIVERSITY OF UTAH RESEARCH FOUNDATION, a Utah nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>PICKY PAM AT THE BEACH, LLC, a California limited liability company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, LARADA SCIENCES, INC. ("LARADA") and the UNIVERSITY OF UTAH RESEARCH FOUNDATION ("UURF") (collectively, "PLAINTIFFS"), by and through their undersigned counsel, hereby bring this Complaint for Patent Infringement against Defendant Picky Pam at the Beach, LLC, d/b/a Professional Lice Solutions ("PICKY PAM"), seeking monetary damages and injunctive relief, and demanding a trial by jury, and alleging as follows:

## THE PARTIES

1. Plaintiff LARADA SCIENCES, INC. is a corporation organized under the laws of the State of Delaware, with its principle place of business at 455 North 400 West, Salt Lake City, Utah 84103. LARADA holds an exclusive license to the Patents-in-Suit, described below, from Plaintiff UURF.

2. Plaintiff UNIVERSITY OF UTAH RESEARCH FOUNDATION is a nonprofit corporation organized under the laws of the State of Utah, with its principle place of business at 421 Wakara Way, Suite 170, Salt Lake City, Utah 84108. The UURF is the owner by assignment of the Patents-in-Suit, described below.

3. PLAINTIFFS are informed and believe, and on that basis allege, that PICKY PAM is a limited liability company organized under the laws of the State of California, with its principal place of business at 714 Adams Avenue, Suite 103, Huntington Beach, California 92648.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. The Court has personal jurisdiction over PICKY PAM because PICKY PAM has a regular and established place of business in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b), (c), and (d), and 1400(b), because PLAINTIFFS are informed and believe, and on that basis allege, that: PICKY PAM resides in this District; has committed acts of infringement in this District; has a regular and established place of business in this District; and has transacted business in this District, including making, using, offering to sell, selling, and/or having sold a device that infringes the Patents-in-Suit, described below.

## THE PATENTS-IN-SUIT

8. United States Patent Number 7,789,902 ("the '902 Patent") is entitled "Ectoparasite Eradication Method and Device." The '902 Patent was filed on November 23, 2005, and was duly and legally issued by the United States Patent and Trademark Office on September 7, 2010. A true and correct copy of the '902 Patent is attached hereto as Exhibit A.

9. United States Patent Number 8,162,999 ("the '999 Patent") is entitled "Ectoparasite Eradication Method and Device." The '999 Patent was filed on September 3, 2010, and was duly and legally issued by the United States Patent and Trademark Office on April 24, 2012. A true and correct copy of the '999 Patent is attached hereto as Exhibit B.

10. PLAINTIFFS have, to the extent required, complied with the marking provisions of 35 U.S.C. § 287 for all time periods relevant to PICKY PAM's infringement of the '902 Patent and the '999 Patent (collectively, "the Patents-in-Suit" or "the '902 and '999 Patents").

## THE AIRALLÉ LICE ERADICATION DEVICE

11. The Patents-in-Suit relate to methods and devices for eliminating ectoparasites, such as head lice.

12. A head lice infestation can be difficult to treat. Traditionally, removal of head lice (and their eggs) involved a time-intensive and tedious manual process using a louse comb to remove lice and their eggs from an individual's hair. Chemical treatments exist, but can be undesirable because lice have developed a resistance to many such treatments, and because these treatments involve pesticides that many people do not want to apply to their bodies.

/ / /

/ / /

13. Researchers at the University of Utah, including Dale H. Clayton, Ph.D., the first inventor named on the Patents-in-Suit, developed methods involving heating air to a certain temperature and applying the heated air to a human head to effectively eliminate lice infestations without the use of chemicals. The researchers also developed a device called the "LouseBuster" to carry out these methods.

14. LARADA was formed in 2006 to bring the LouseBuster to market. Ultimately, the LouseBuster was renamed "AirAllé."

15. LARADA's business model is to lease AirAllé devices to individuals and businesses that wish to perform lice treatments using the device. The lease agreements include training in, among other things, how to use the AirAllé to perform the methods claimed in the Patents-in-Suit.

16. More than 85 businesses currently lease AirAllé devices to perform head lice treatments.

## PICKY PAM'S WILLFUL INFRINGEMENT OF THE PATENTS-IN-SUIT

17. In 2012, PICKY PAM's owner, Pam Skinner, entered into an agreement with LARADA to lease the LouseBuster.

18. In connection with the 2012 lease agreement, LARADA provided PICKY PAM with training in the effective use of the device, including the methods claimed in the Patents-in-Suit.

19. Ms. Skinner praised PLAINTIFFS' technology, calling it "a really cool invention in the world of headlice!"

20. PICKY PAM's website states that Ms. Skinner used PLAINTIFFS' technology, and "loved it."

/ / /

/ / /

4

21. PICKY PAM's website indicates that Ms. Skinner did not wish to continue to pay for the technology PLAINTIFFS developed and patented. PICKY PAM's website also states that Ms. Skinner looked for an "alternative option" and found "nothing on the market." So, PICKY PAM created the "Dehydration Station."

22. PICKY PAM has made, used, sold, and offered for sale a device under the name "The Dehydration Station" (previously known as "The Lice Device"), which PICKY PAM offers for sale at least through its website at www.DriedLice.com, as shown below:

**THE DEHYDRATION STATION**
$1,995.00

QTY
1

ADD TO CART

The Dehydration Station is our patent pending lice dehydration system. It operates at a comfortable temperature, and an airflow/volume of about 100 cfm (cubic feet per minute). Research has shown that lice and nits die when exposed to heated air, and an airflow of 40-80, for at least 30 seconds. The Dehydration Station surpasses those guidelines, yet it is comfortable and FAST! You can dehydrate an entire head in about 10 minutes, due to warmer tempeture and higher air

23. The Dehydration Station is a modified X Power B-16 Pet Stand Drier. The manufacturer's website for the X Power B-16 Pet Stand Drier states that it is "specially designed to make pet drying a whole lot easier and faster." The modifications PICKY PAM has made include the addition of a comb device specifically designed to be used in the treatment of head lice.

24. The Dehydration Station is specifically designed to, and does, apply air heated to between 54 and 65 degrees centigrade to a person's scalp.

25. The Dehydration Station is designed to, and does, apply that air to a target area on the scalp with airflow of about 25 cubic feet per minute to about 125 cubic feet per minute.

26. PICKY PAM uses The Dehydration Station to perform head lice treatments using the methods claimed in the Patents-in-Suit.

27. PICKY PAM instructs purchasers and users of The Dehydration Station to use it to perform the methods claimed in the Patents-in-Suit.

28. PICKY PAM's customers use The Dehydration Station to treat head lice using the methods claims in the Patents-in-Suit.

29. PICKY PAM markets and sells The Dehydration Station to others and also provides training in using the device to treat human head lice. PLAINTIFFS are informed and believe, and on that basis allege, that PICKY PAM did so with the specific intent that the purchasers use The Dehydration Station to perform the methods claimed in the '902 and '999 Patents, and knowing that such use would constitute infringement of said patents.

30. The Dehydration Station is especially made for use in performing the methods claimed in the '902 and '999 Patents, and is not a staple article of commerce suitable for substantial non-infringing uses. The Dehydration Station is sold with a comb attachment that has been specially designed for lice treatments, and with instructions that describe only how to use the device for lice treatments.

6

31. Use of The Dehydration Station to perform the claimed methods constitutes direct patent infringement. In selling The Dehydration Station to purchasers with knowledge of the Patents-in-Suit, and providing training in the use of The Dehydration Station to perform the methods claimed in the Patents-in-Suit, PICKY PAM knew and intended that purchasers would use the device as a material part of infringement of the '902 and '999 Patents.

32. These acts constitute direct, induced, and contributory infringement of the '902 and '999 Patents.

33. PICKY PAM engaged in infringement of the Patents-in-Suit with full knowledge of the Patents-in-Suit, which it obtained at least as a result of Ms. Skinner's agreement with LARADA, and continued to infringe despite knowing that there was an objectively-high likelihood that PICKY PAM's actions and the actions of PICKY PAM's customers constitute infringement of the Patents-in-Suit.

## FIRST CAUSE OF ACTION
### Infringement of United States Patent Number 7,789,902

34. PLAINTIFFS repeat and reallege the allegations of paragraphs 1-33, above, as if fully set forth herein.

35. PICKY PAM has directly infringed and is still directly infringing the '902 Patent by using devices, including without limitation, The Dehydration Station to perform the methods of one or more claims of the '902 Patent, including, at a minimum, Claims 1, 4, 5, 10, 11, 14, 15, 21, 23, and 26.

36. PICKY PAM has actively induced the infringement of the '902 Patent by selling or providing The Dehydration Station to customers, and by providing training and/or instruction in its use, with knowledge of the Patents-in-Suit and the specific intent of encouraging, aiding, or causing others to directly infringe the '902 Patent. PICKY PAM's customers then use The Dehydration Station to perform the methods claimed in the Patents-in-Suit, including, at a minimum, Claims 1, 4, 5, 10, 11, 14, 15, 21, 23, and 26.

37. PICKY PAM has contributed to the infringement of others by selling or providing to others The Dehydration Station, which is a device especially made or adapted for use in performing the methods of the '902 Patent, the use of which is a material part of the claimed invention, and which is not a staple article suitable for substantial non-infringing use.  PICKY PAM's customers then use The Dehydration Station to perform the methods claimed in the Patents-in-Suit, including, at a minimum, Claims 1, 4, 5, 10, 11, 14, 15, 21, 23, and 26.

38. These infringements were and continue to be willful, deliberate, and intentional.

39. PICKY PAM's direct and indirect infringement of the '902 Patent has caused PLAINTIFFS substantial harm.

## SECOND CAUSE OF ACTION

### Infringement of United States Patent Number 8,162,999

40. PLAINTIFFS repeat and reallege the allegations of paragraphs 1-39, above, as if fully set forth herein.

41. PICKY PAM has directly infringed and is still directly infringing the '999 Patent by using The Dehydration Station to perform the methods of one or more claims of the '999 Patent, including, at a minimum, Claims 1, 6, 8, 10, 11, 12, 13, 16, 18, and 20.

42. PICKY PAM has actively induced the infringement of the '999 Patent by selling or providing The Dehydration Station to its customers, and by providing training and/or instruction in its use, with knowledge of the Patents-in-Suit and the specific intent of encouraging, aiding, or causing others to directly infringe the '999 Patent.  PICKY PAM's customers then use The Dehydration Station to perform the methods claimed in the Patents-in-Suit, including, at a minimum, Claims 1, 6, 8, 10, 11, 12, 13, 16, 18, and 20.

43. PICKY PAM has contributed to the infringement of others by selling or providing to others a device especially made or adapted for use in performing the

methods of the '999 Patent, the use of which is a material part of the claimed invention, and which is not a staple article suitable for substantial non-infringing use. PICKY PAM's customers then use The Dehydration Station to perform the methods claimed in the Patents-in-Suit, including, at a minimum, Claims 1, 6, 8, 10, 11, 12, 13, 16, 18, and 20.

44. These infringements were and continue to be willful, deliberate, and intentional.

45. PICKY PAM's direct and indirect infringement of the '999 Patent has caused PLAINTIFFS substantial harm.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS respectfully request that the Court enter a judgment in their favor as follows:

(i) Declaring that PICKY PAM has infringed United States Patent Number 7,789,902;

(ii) Declaring that PICKY PAM has infringed United States Patent Number 8,162,999;

(iii) Awarding PLAINTIFFS damages adequate to compensate for PICKY PAM's infringing activities, including supplemental damages for any post-verdict infringement up until entry of the final judgment with an accounting as needed, together with prejudgment and post-judgment interest on the damages awarded; all of these damages to be enhanced in an amount up to treble the amount of compensatory damages as justified under 35 U.S.C. § 284;

(iv) Declaring that PICKY PAM's infringement of the Patents-in-Suit was willful and awarding treble damages under 35 U.S.C. § 284;

(v) Permanently enjoining PICKY PAM, and its officers, agents, directors, employees, parents, subsidiaries, affiliates, divisions, successors, assigns, and all persons in privity or active concert or participation with them, from infringing the Patents-in-Suit;

(vi) Directing that PICKY PAM destroy or deliver to PLAINTIFFS all documents, materials, and things, including but not limited to products, advertising and promotional materials, sales and marketing plans, and the like, which infringe the Patents-in-Suit, or otherwise violate PLAINTIFFS' rights in the Patents-in-Suit;

(vii) Declaring that this case is exceptional under 35 U.S.C. § 285 and awarding PLAINTIFFS their reasonable costs and expenses of litigation, including attorneys' and experts' fees; and

(viii) Awarding PLAINTIFFS such other relief as the Court may deem just and proper.

## JURY DEMAND

PLAINTIFFS demand a trial by jury as to all claims and all issues properly triable thereby.

DATED: December 3, 2015                Richard M. Miller
                                       **BALLARD SPAHR LLP**

                                       /s/ TMJ
                                       Terrence M. Jones

                                       Attorneys for Plaintiffs LARADA SCIENCES, INC. and UNIVERSITY OF UTAH RESEARCH FOUNDATION